IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

RELETHEA E. DAVIS,

      Plaintiff,                                  No. CIV S-08-2096 EFB

      vs.

COMMISSIONER OF SOCIAL SECURITY,

      Defendant.                           ORDER
_____/

      Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB") under Title II and XVI of the Social Security Act. For the reasons that follow, plaintiff's motion for summary judgment and/or remand is granted, the Commissioner's motion for summary judgment is denied, and this matter is remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings as directed in this opinion. The Clerk is directed to enter judgment for plaintiff.

I. BACKGROUND

      Plaintiff formally applied for DIB on August 7, 2001 and for SSI on August 22, 2001. Administrative Record ("AR") 435-37; Def.'s Mot. for Summ. J. at 1. Following a somewhat complicated procedural history, the case was remanded to an ALJ by the United States District

1

Court in 2005. *See* 2:04-CV-02356-KJM, Dckt No. 16. The ALJ held a hearing and found that plaintiff was not disabled on December 5, 2006. AR 602. Plaintiff filed exceptions to the hearing decision and the Appeals Council remanded the case for another hearing, instructing the ALJ to further consider the treating and examining source opinions and further evaluate the claimant's subjective symptoms. AR 629-30. The Appeals Council's opinion stated:

> . . . the [ALJ] was unable to fully credit the claimant's allegations regarding the severity of her symptoms or her functional limitations but does not consider the following factors...The claimant testified that she still suffers from constant pain deep in her abdomen, despite taking Vicodin and Darvocet, and that these medications cause her to sleep 5 to 6 hours during the day. She also stated that she relies upon a friend to change her sheets, wash her laundry, vacuum, mop the floors, and clean the bathroom, and that she is able to walk no farther than the mailbox or walk to the car when being picked up to go to a doctor or go shopping. These limitations are greater than those found in the decision.

*Id.* at 630. The Appeals Council ordered the ALJ to "further evaluate the claimant's subjective complaints and provide rationale in accordance with the disability regulations pertaining to evaluation of symptoms." *Id.*

ALJ Stanley Hogg held another hearing on July 31, 2007. *Id.* at 740. Plaintiff was represented by counsel at the hearing. *Id.* The ALJ issued a decision on September 20, 2007, finding that plaintiff was disabled up to January 2004, but not after.[1] *Id.* at 574-87. The ALJ

---

[1] Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. §§ 1382 *et seq.* Disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. § 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits under the SSI program. *See* 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 and 416.971-76; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.

made the following specific findings:

> 1. The claimant met the insured requirements of the Social Security Act as of June 11, 1999, the date the claimant became disabled.
>
> 2. The claimant has not engaged in substantial gainful activity since...the alleged onset date (20 CFR 404.1520(b), 494,1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).
>
> 3. At all times relevant to this decision, the claimant has the following severe impairments: insulin-dependent diabetes mellitus, status post-pancreatic cyst, chronic pain syndrome, and obesity (20 CFR 404.1520(c) and 416.920(c)).
>
> ***
>
> 4. From June 11, 1999 through January 30, 2004, the period during which the claimant was disabled, the claimant did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d) and 416.920(d)).
>
> 5. After careful consideration of the entire record, the undersigned finds that, from June 11, 1999 through January 30, 2004, the claimant had the residual functional capacity to perform a very narrow range of work involving no more than brief periods of standing, walking, sitting, concentrating, or other basic work activity on a regular and continuing basis.
>
> ***
>
> 6. The claimant has past relevant work as a nurse aide and preschool teacher (20 CFR 404.1565 and 416.965).
>
> 7. The claimant was born on August 22, 1964 and was 35 years old on the alleged onset date the application was filed, which is defined as a younger individual (20 CFR 404.1563 and 416.963).

---

> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

*Lester v. Chater,* 81 F.3d 821, 828, n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. *Bowen*, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. *Id.*

3

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not an issue in view of the claimant's age category (20 CFR 404.1568 and 416.968).

10. From June 11, 1999 through January 30, 2004, considering the claimant's age, education, work experience, and residual functional capacity, there were no jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1560(c), 404.1566, 416.960(c) and 416.966).

\*\*\*

11. The claimant was under a disability, as defined in the Social Security Act, from June 11, 1999 through January 30, 2004 (20 CFR 404.1520(g) and 416.920(g)).

12. Medical improvement occurred as of January 31, 2004, the date the claimant's disability ended (20 CFR 404.1594(b)(1) and 416.994(b)(1)(I)).

\*\*\*

13. Beginning on January 31, 2004, the claimant has not had an impairment or combination of impairments that meets or medically equals one of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d) and 416.920(d)).

14. After careful consideration of the entire record, the undersigned finds that, beginning January 31, 2004, the claimant had the residual functional capacity to perform a range of work falling between sedentary and light exertion.

\*\*\*

15. The medical improvement that has occurred is related to the ability to work (20 CFR 404.1594(b)(4)(I) and 416.994(b)(1)(iv)(A)).

\*\*\*

16. Since January 31, 2004, the claimant's age category has not changed has been a younger individual (20 CFR 404.1563 and 416.963).

17. The claimant has past relevant work (20 CFR 404.1565 and 416.965.

////

> 18. In view of the claimant's age and residual function capacity transferability of work skills is not material (20 CFR 404.1568 and 416.968).
>
> 19. Beginning on January 31, 2004, considering the claimant's age, education, work experience, and residual functional capacity, the claimant has been able to perform a significant number of jobs in the national economy (20 CFR 404.1560(c), 404.1566, 416.960(c) and 416.966).
>
> ***
>
> 20. The claimant's disability ended on January 31, 2004 (20 CFR 404.1594(f)(8) and 416.994(b)(5)(vii)).

*Id.* at 578-88.

Plaintiff requested that the Appeals Council review the ALJ's decision. On February 9, 2008, the Appeals Council denied review after finding that plaintiff had not timely filed exceptions, leaving the ALJ's decision as the final decision of the Commissioner of Social Security. *Id.* at 567-69.

## II. SUMMARY OF PLAINTIFF'S TESTIMONY

Plaintiff was the only person who testified at the July 31, 2007 hearing. *Id.* at 742. She testified that she was born on August 22, 1964, and that she worked as a CNA and then at a preschool for 13 or 14 years. *Id.* at 743-44. She stated that she loved her job but had to quit in June of 1999 when she was hospitalized for a month with necrotizing pancreatitis which caused her diabetes. *Id.* at 746-47.

Plaintiff testified that she had been in "excruciating pain" ever since the surgery eight years ago. *Id.* at 752-755. She testified that she currently had "pain all the time," and that the only way to "desensitize" the pain was to take medication. *Id.* at 751. She testified that she was currently feeling very nauseous and had been vomiting frequently lately. *Id.* at 758. She explained when she was under stress, she vomited. *Id.* She testified that her pain prevented her from focusing and doing things. *Id.* at 759. She testified that she had good days and bad days and that "I may have a day that I feel pretty good . . . I may do sort of okay in the morning and

then about evening time or whatever it is, the pain just returns, right." *Id.* After a vomiting episode her body felt "traumatized," and she would take a pain pill, and sleep the majority of the day. *Id.* at 760.

Plaintiff testified that she was unable to stand for more than an hour because of the high pain level and her stomach discomfort. *Id.* at 761. She testified that after an hour of standing, she had to sit down. She stated that she was also only able to sit for up to an hour because of her stomach condition. *Id.* at 762. Plaintiff stated that she was unable to lift a gallon of milk or lift her laundry. *Id.* at 763. She reported that she was unable to vacuum and that she cooked by microwaving her food. *Id.* She stated that she was unable to do a whole load of dishes because, "I can't put myself through the stress, like I said, my stomach and everything." *Id.* at 764. She testified that she was unable to mop and did not drive. *Id.* She testified that she could not ride in the car while wearing a seat belt "[b]ecause I feel the pressure and it just feels like a lot of agony." *Id.* at 765.

She testified that she did not go dancing or go out to visit with friends, and that she could not sit through a movie. *Id.* at 765-66. She said that she had to stop going to church and to the theater because she was unable to sit for a long time. *Id.* at 766-67.

Plaintiff testified that she was not ready to try to go back to work. " I don't feel that I would, that I would even, even last with the pain and everything that I have." *Id.* at 767. She testified that when she walked for a while she began to feel the pressure in her stomach, and that she had tried taking a 20 minute walk a few weeks before the hearing and it made her "a little bit outdone." *Id.* at 770. She stated that she was currently taking Darvocet in the morning after she got up and sometimes had to take a nap for about four to five hours, but that typically her nap was about two hours. *Id.* at 770-71. She also took Darvocet in the evening and went to sleep after dinner. *Id.* at 771.

////

////

### III. ISSUES PRESENTED

Plaintiff moves for summary judgment, contending that the ALJ failed to credit her testimony as to the nature and extent of her functional limitation without a legitimate basis for doing so, and failed to properly assess plaintiff's residual functional capacity ("RFC") and as a result erred in finding her capable of performing a significant number of sedentary/ light jobs based on the GRIDS without the testimony of a vocational expert. Pl.'s Mot. for Summ. J. at 1. As discussed below, because the court finds that remand for further proceedings is required, the court does not specifically address the second alleged error.

### IV. LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record and the proper legal standards were applied. *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 973 (9th Cir. 2000); *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. *See Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is more than a mere scintilla, but less than a preponderance. *Saelee v. Chater*, 94 F.3d 520, 521 (9th Cir. 1996). "'It means such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

////

V. <u>ANALYSIS</u>

Plaintiff contends that the ALJ erred by failing to credit her testimony regarding the nature and extent of her functional limitations. Pl.'s Mot. for Summ. J. at 1. Plaintiff contends that while the ALJ found that plaintiff's impairments could reasonably be expected to produce the symptoms that plaintiff testified at the hearing that she suffered from, he then erroneously concluded that plaintiff's testimony was not credible without providing the specific, clear, and convincing reasons required by law. *Id.* at 10-12.

Defendant argues that the ALJ appropriately noted that plaintiff's absence of treatment a year after her surgery was inconsistent with her reported symptoms, and that he also noted that plaintiff's pain and related impairments continued to improve with time and demonstrated medical improvement. Therefore, defendant argues, the ALJ put forth clear and convincing reasons for determining that plaintiff was no longer disabled as of January 31, 2004. Def.'s Mot. for Summ. J. at 4-5.

The Ninth Circuit recently reiterated the two-step analysis that an ALJ must engage in when determining whether a claimant's testimony regarding subjective pain or symptoms is credible:

> First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment "which could reasonably be expected to produce the pain or other symptoms alleged." *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir.1991) (en banc) (internal quotation marks omitted). The claimant, however, "need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir.1996). "Thus, the ALJ may not reject subjective symptom testimony...simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged." *Id.*; *see also Reddick*, 157 F.3d at 722 ("[T]he Commissioner may not discredit the claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence.").
>
> Second, if the claimant meets this first test, and there is no evidence of malingering, "the ALJ can reject the claimant's

8

> testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen*, 80 F.3d at 1281; *see also Robbins*, 466 F.3d at 883 ("[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each.").

*Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). To support a lack of credibility finding, the ALJ must "point to specific facts in the record which demonstrate that [the claimant is in less pain or the claimant's symptoms are less severe] than she claims." *Vasquez v. Astrue*, 547 F.3d 1101, 1105 (9th Cir. 2008).

In this case, the ALJ wrote the following regarding plaintiff's credibility:

> From June 11, 1999 through January 30, 2004, the claimant's statements concerning the limiting effects of her symptoms are *generally credible* . . . . Treating and examining medical source statements are well supported and show the claimant was precluded from even the minimal demands of a sedentary job initially. However, Dr. Stansell's January 30, 2004, examination found good range of motion, normal motor and sensory functioning and reflexes, and concluded she was capable of performing a narrow range of light work . . . . As noted above no evidence of recurrent pancreatitis or other significant abnormality was found and the subsequent records primarily involve routine monitoring and medication refills. . . .

AR at 583 (emphasis added). With respect to the plaintiff's testimony regarding her post-January 2004 symptoms, the ALJ wrote only that:

> the undersigned finds that the claimant's medically determinable impairments reasonably be [sic] expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are *not entirely credible* beginning on January 31, 2004.
>
> The claimant's absence of treatment a year after her surgery does not support her alleged continued disability...as noted above the claimant's pain and related impairments continued to improve with time and to demonstrate medical improvement.

*Id.* at 586 (emphasis added). The phrase "as noted above" likely refers to the section of the ALJ's decision discussing her severe impairments, which stated:

9

> On January 30, 2004, the claimant was examined by treating physician William Stansell, MD who found...toe and heel walking, reflexes, motor and sensory functioning, and range of motion were normal though she complained of discomfort with abdominal palpitation. Dr. Stansell's accompanying medical source statement indicates the claimant's present capacity for lifting up to 5 pounds frequently, standing or walking for four hours in ½ hour increments, and no exertion such as bending, climbing, stooping, crawling, kneeling, etc. which could increase her pain but no limitations in sitting or significant mental limitations...The subsequent outpatient progress records indicate the claimant returned to the county clinic for monitoring of her diabetes and previous pancreatic surgery and abdominal pain with laboratory testing about every two to three months. In October 2006 Dr. Stansell referred her for abdominal CT scan, which was found to be stable with no recurrent pancreatitis. She continued to return to the treatment facility for medication refills and follow-up. Though she complained of abdominal pain Dr. Stansell noted on March 8, 2007 that no scarring was found and that it had to be assumed that it was benign. He also observed that she walked and climbed on and off of the exam table well...In a May 15, 2007 assessment Dr. Stansell indicated that the claimant remained capable of standing/walking for uninterrupted periods of two to four hours and a total of four to six hours per 8-hour day, sitting six to eight hours, occasionally lifting five to ten pounds, careful bending or stooping, and otherwise she "needs to move ahead in career, employment, etc. in spite of any pain she may have". . . .

*Id*. at 582-83.

The court finds that the ALJ improperly discounted plaintiff's testimony regarding the continuing severity of her symptoms. It is noteworthy that the ALJ's written decision found that plaintiff's testimony regarding her pre-January 2004 symptoms credible, but that her testimony regarding her post-January 2004 symptoms not credible but yet failed to articulate any reason why plaintiff's motivation to testify truthfully would have changed depending on which time period is in issue. The explanation for these findings appears to conflict with the analysis laid out in *Lingenfelter*. Although the text of the ALJ's discussion of plaintiff's credibility has a typographical error and omits one or more words, he appears to have expressly found that the plaintiff's medical condition could reasonably be expected to produce the symptoms of which she complained. He simply questions the extent of the symptoms for the time period in question.

////

He did not find that there was evidence that plaintiff was malingering. Therefore, he was obligated to provide "specific, clear and convincing" reasons for rejecting plaintiff's testimony regarding the severity of her symptoms post-January 2004. He plainly has failed to do so.

The only reasons that the ALJ gave for discrediting plaintiff's testimony regarding the severity of her post-January 2004 symptoms were 1) that she had an absence of treatment for a year after her surgery, and 2) that "as noted above" plaintiff's impairments had improved over time. Regarding the first reason, plaintiff had surgery in 1999, and the following year was therefore four years before the time period that is relevant in this proceeding. Therefore, any absence of treatment during the year following the surgery has little probative value in determining plaintiff's post-January 2004 level of impairment, especially in light of later medical records documenting plaintiff's continued pain and impairment. Therefore, the first reason is neither clear nor convincing. The second reason, that plaintiff had improved over time, is neither specific, clear nor convincing. The ALJ did not specifically explain what medical records he relied upon in determining that plaintiff had improved over time, or how they discredited her testimony regarding the severity of her symptoms. Assuming that the ALJ was referring to the post-2003 records described earlier in his opinion, the opinion fails to explain specifically how those records discredited plaintiff's testimony. Indeed, Dr. Stansell's 2004 records, as described in the ALJ's summary, do not appear to be inconsistent with plaintiff's testimony. The doctor's 2007 opinion that plaintiff could stand or walk for uninterrupted periods of two to four hours and a total of four to six hours per eight-hour day, and sit for six to eight hours, does appear to be inconsistent with plaintiff's testimony that she cannot sit or stand for more than an hour at a time, but this inconsistency does not lead to the conclusion that plaintiff was not disabled between 2004 and 2007. Accordingly, the two reasons provided were not sufficient to reject plaintiff's testimony regarding the severity of her symptoms.

As the ALJ erred in rejecting plaintiff's testimony regarding the severity of her post-January 2004 symptoms, the case is remanded for further proceedings.

## VI. CONCLUSION

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment and/or is granted.

2. The Commissioner's cross-motion for summary judgment is denied.

3. This action is remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this order.

4. The Clerk is directed to enter judgment for plaintiff.

Dated: March 31, 2010.

_____
EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE